IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34005-8-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GUILLERMO ADAM LEDEZMA, aka | ) | UNPUBLISHED OPINION |
| GUILLERMO A. LEDESMA, aka | ) | |
| ADAM LEDESMA, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — Guillermo Adam Ledesma appeals the trial court's manifest injustice disposition and the length of his disposition after his plea of guilty to residential burglary. Because ample evidence supports the manifest injustice disposition and the length of the disposition, we affirm the trial court.

FACTS

This appeal arises from Guillermo Adam Ledesma's burglary of his sister's home in December 2015, but we begin with previous events because Ledesma appeals his sentence, not his disposition. Ledesma's father, Guillermo Ledesma, is Ledesma's sole caregiver. Outside of Ledesma's father, no family member will care for Ledesma

because of his uncontrolled behavior. A restraining order precludes Ledesma's mother from contact with him because of the two smoking marijuana together.

Guillermo Adam Ledesma committed a third degree theft in September 2014. At the time of the burglary, Ledesma was on probation from a third degree malicious mischief disposition in June 2015. Ledesma violated the terms of his probation on three dates: September 30, 2015; October 23, 2015; and November 18, 2015. On October 23, 2015, the court ordered Ledesma to undergo alcohol and drug treatment. Ledesma completed his evaluation for substance abuse, but had not yet attended treatment. On November 18, 2015, the court ordered Ledesma to serve fifteen days in confinement. Two weeks after being released from confinement, he committed the current offense.

On December 15, 2015, sixteen-year-old Guillermo Adam Ledesma burglarized the home of his sister and brother-in-law, Alicia and Agustin Ortega, while they attended their son's Christmas pageant. Ledesma declined to attend the pageant with the rest of his family. Instead, he asked to be dropped at a nearby convenience store. While the family attended the Christmas pageant, Ledesma walked to the Ortega home and climbed through a window. The Ortegas never granted Ledesma permission to be inside the residence without their presence.

When the Ortegas returned home from the pageant, Alicia and Agustin Ortega found Guillermo Adam Ledesma inside with their private property in his pockets. Alicia

Ortega was pregnant at the time of the incident and grew upset when she discovered Ledesma burglarizing her home. Alicia had recently suffered a miscarriage.

After December 2015, the Ortega family relocated for fear that Guillermo Adam Ledesma would burglarize their home again. At trial, Agustin Ortega testified that Ledesma burgled the Ortega home on three or four occasions before this current offense.

PROCEDURE

The State of Washington charged Guillermo Adam Ledesma with residential burglary and sought a manifest injustice higher sentence. On January 7, 2016, the juvenile court held a plea hearing and determined that Ledesma entered his guilty plea knowingly, intelligently and voluntarily, and that he understood the charge and consequences of his plea. The juvenile court confirmed Ledesma's understanding that the court could impose a manifest injustice disposition up to twenty-eight weeks.

On January 14, 2016, the juvenile court held a sentencing hearing to determine the propriety of a manifest injustice sentence. Guillermo Adam Ledesma requested that the juvenile court impose the standard sentence range of local sanctions, which could not exceed thirty days confinement. The State recommended a twelve to sixteen week manifest injustice disposition. The juvenile probation department recommended twenty-one to twenty-eight weeks. The juvenile court heard testimony from Ledesma, victim Agustin Ortega, and two juvenile probation officers. Victim Alicia Ortega did not testify. Ledesma's father declined to testify.

3

Probation Officer Steve Driscoll testified that Guillermo Adam Ledesma held a criminal history. The probation office had supervised Ledesma for two years, and no supervision methods had improved Ledesma's behavior. Instead, Ledesma's criminal activity escalated.

Probation Officer Steve Driscoll advised the juvenile court that Guillermo Adam Ledesma lacked structure and supervision at home. Ledesma lived and behaved as he pleased. Ledesma belonged to a gang, with his gang moniker being "Gargoyle." Report of Proceedings (RP) at 20. Driscoll informed the juvenile court that Ledesma never attempted to compensate his victims and lacked empathy for his victims.

Steve Driscoll recommended to the juvenile court that:

> We feel that he needs to be protected from the community, as he is consistently stealing, engaging in malicious mischief, which he has convictions for, vehicle prowling/thefts. The community needs to be protected from this ongoing behavior.
> . . . .
> The community is unsafe with Guillermo being placed on local supervision.

RP at 19-20.

Probation Officer Steve Driscoll additionally informed the juvenile court that Guillermo Adam Ledesma needed the structure of detention. Driscoll opined:

> I believe he needs to take—full advantage of approximately 30 days in an intake cottage at a JRA [Juvenile Rehabilitation Administration] facility, in which they can get his mental health condition assessed, they can look at his drug and alcohol needs. He needs to be in an inpatient treatment—that is secure.

4

The only time that Guillermo seems to do anything is when he's in this building, in a highly structured environment. This is the only time that he goes to school on a daily basis. This is the only time that we know he stays sober. This is the only time where he's not out committing crimes against others.

He needs time after inpatient treatment. He needs aftercare. He needs a significant length of time to remain sober, to be reintegrated back into the community more safely than just opening up the doors today. The state needs to supervise and monitor this young man and integrate him back into the community in a safer manner than what we're allowed to do here.

He'll have the opportunity to eventually work his way into a group home setting, start earning privileges, to perhaps one day earning back some of the trust of his father, his family, the community.

RP at 21-22.

At the juvenile court's request, Juvenile Probation Counselor Sharon Dupuis-Vasquez also testified on behalf of the State. As Guillermo Adam Ledesma's assigned probation counselor, Dupuis-Vasquez closely supervised Ledesma. She advised the court that Ledesma would repeat his crimes if returned to the community. According to Dupuis-Vasquez, the probation office recommends commitment to the Juvenile Rehabilitation Administration facility when the juvenile's behavior fails to improve under probation. Ledesma's behavior progressively worsened despite probation. Ledesma completed aggression replacement training in March 2015 only to commit malicious mischief in June 2015. At the close of her testimony, Dupuis-Vasquez opined that a Juvenile Rehabilitation Administration facility remains the only option to help Ledesma. She noted that Ledesma acknowledged that a stay in the Juvenile Rehabilitation Administration facility might be the best place for him.

5

Victim Agustin Ortega testified that his brother-in-law, Guillermo Adam Ledesma, had "spiraled out of control." RP at 24. Ortega believed that Ledesma previously burglarized the Ortega home. Ledesma's recent burglary traumatized his pregnant wife. Ledesma's father must work and leaves him alone in a trailer. Ledesma does not follow any rules and disappears for weeks at a time. Whenever Ledesma leaves juvenile detention, random people drive by Ledesma's father's property looking for Ledesma and threatening his father's life when told to leave the premises.

Agustin Ortega further testified that Guillermo Adam Ledesma lacks empathy for anyone. Ledesma steals from children. He cannot pay for the stolen items because he owes money to drug dealers.

At the conclusion of the sentencing hearing, the juvenile court determined that a disposition within the standard range constituted a manifest injustice for the following reasons: (1) the victim's specific vulnerability, (2) Guillermo Adam Ledesma's recent criminal history and failure to comply with conditions of a recent disposition order, (3) a lenient standard range disposition, and (4) standard probation failing to provide the structure needed for rehabilitation. In support of finding the Ortegas particularly vulnerable, the juvenile court found that "[t]here was a level of sophistication demonstrated in selecting the victim whom are family members." Clerk's Papers (CP) at 39.

The juvenile court acknowledged difficulty in determining whether to accept the State's recommendation of twelve to sixteen weeks in a juvenile facility or the probation department's recommendation of twenty-one to twenty-eight weeks. After considering testimony, the juvenile court accepted the probation department's recommendation.

The juvenile court ordered Guillermo Adam Ledesma to twenty-one to twenty-eight weeks of confinement at the Washington State Department of Social Health Services, Juvenile Rehabilitation Administration. The juvenile court found that:

> So, I'm looking at this Adam, quite honestly—and I mean this very sincerely—what I can do for you right now that's going to make sure that—it is better [for you] when you get out, that there is structure for you.
> And I am absolutely convinced that a manifest injustice upward is—is appropriate. I can't tell you that I'm convinced of the amount of time but I am convinced—a manifest injustice upwards, with all of these situations been described to the court from all sides today, is the right answer for you. And I—as much as for the community's protection, I'm actually really more focused on you, having you in a secured environment, giving you—not a computer to do school on but an actual person.

RP at 52.

## LAW AND ANALYSIS

We address only the juvenile court's manifest injustice disposition of twenty-one to twenty-eight weeks in a Juvenile Rehabilitation Administration facility. A disposition within the standard range may not be appealed. RCW 13.40.160(2). Since the juvenile court imposed a disposition outside the standard range, Guillermo Adam Ledesma may appeal the disposition. RCW 13.40.160(2).

7

Guillermo Adam Ledesma seeks reversal of the manifest injustice disposition on several grounds. First, the trial court failed to patently place its findings on the record. Second, insufficient evidence supports the findings of fact leading to the conclusion of manifest injustice. Third, clear and convincing evidence fails to support the juvenile court's reasons for the disposition. Fourth, the findings of fact fail to support the trial court's conclusions of law and the conclusions of law are erroneous. Fifth, even assuming this court affirms a manifest injustice disposition, the trial court imposed an excessive length of sentence. We address Ledesma's arguments in the order presented.

Juvenile Court's Findings on Record

Guillermo Adam Ledesma argues that the juvenile court's findings were not clearly indicated in the record. The sentencing judge must specify the portions of the record material to the finding of manifest injustice. JuCR 7.12(e).

The juvenile court's disposition order refers to and thereby incorporates its oral ruling. Review of the oral ruling reveals testimony from Probation Officer Steve Driscoll and Probation Counselor Sharon Dupuis-Vasquez, and argument of counsel at the disposition hearing. The officers' testimony was material to the manifest injustice disposition. Accordingly, we reject Guillermo Ledesma's contention and rule that the juvenile court satisfied JuCR 7.12(e) requirements.

8

Sufficient Evidence for Manifest Injustice Disposition

The Juvenile Justice Act of 1977, chapter 13.40 RCW, like the Sentencing Reform Act of 1981, chapter 9.94A RCW for adults, employs a grid for juvenile offender sentencing. RCW 13.40.0357. The standard disposition range for the various offenses establishes the appropriate period for rehabilitating juvenile offenders in most cases. *State v. Crabtree*, 116 Wn. App. 536, 543, 66 P.3d 695 (2003). Nevertheless, in some instances, the juvenile court may ignore the grid. According to RCW 13.40.0357 (option D):

> If the court determines that a disposition under [grid options] would effectuate a manifest injustice, the court shall impose a disposition outside the standard range under RCW 13.40.160(2).

In turn, RCW 13.40.160 declares, in part:

> (2) If the court concludes, and enters reasons for its conclusion, that disposition within the standard range would effectuate a manifest injustice the court shall impose a disposition outside the standard range, as indicated in option D of RCW 13.40.0357. The court's finding of manifest injustice shall be supported by clear and convincing evidence.
> A disposition outside the standard range shall be determinate and shall be comprised of confinement or community supervision, or a combination thereof. When a judge finds a manifest injustice and imposes a sentence of confinement exceeding thirty days, the court shall sentence the juvenile to a maximum term, and the provisions of RCW 13.40.030(2) shall be used to determine the range.

RCW 13.40.020 defines "manifest injustice" as:

> (19) "Manifest injustice" means a disposition that would either impose an excessive penalty on the juvenile or would impose a serious, and clear danger to society in light of the purposes of this chapter.

9

The purposes of chapter 13.40 RCW include protection of the citizenry and provision of necessary treatment, supervision, and custody for juvenile offenders. RCW 13.40.010(2)(a), (g); *State v. Duncan*, 90 Wn. App. 808, 812, 960 P.2d 941 (1998). The trial court must consider whether aggravating factors exist before entering a disposition order. RCW 13.40.150(3)(i).

In order to uphold a finding that a standard range disposition would effect manifest injustice, the appellate court must conclude that (1) substantial evidence in the record supports the trial court's reasons, and (2) those reasons clearly and convincingly support the trial court's conclusion. RCW 13.40.230(2)(a). If the appellate court does not find that the standard range disposition would effect manifest injustice, the court must remand the case for disposition within the standard range. RCW 13.40.230(3). Nevertheless, if the appellate court finds that the standard range disposition would effect manifest injustice, we must determine if the disposition is excessive or too lenient. RCW 13.40.230(2)(b).

The reasons supplied by the disposition judge for imposing a manifest injustice disposition must be substantially supported in the record. *State v. J.N.*, 64 Wn. App. 112, 114, 823 P.2d 1128 (1992). Substantial evidence exists when sufficient evidence may persuade a fair-minded, rational person of the finding's truth. *State v. Smith*, 185 Wn. App. 945, 956-57, 344 P.3d 1244, *review denied*, 183 Wn.2d 1011, 352 P.3d 187 (2015). This is a factual question and the juvenile court's reasons will be upheld so long as the

10

reasons are not clearly erroneous. *State v. Jackmon*, 55 Wn. App. 562, 565, 778 P.2d 1079 (1989).

The juvenile court entered fifteen findings of fact, of which Ledesma challenges eight. We review each of the challenged findings of fact.

*Finding of Fact 2: Standard range is clearly too lenient based on prior criminal history*

Guillermo Adam Ledesma contends that the juvenile court erred in finding that a standard range disposition for him was too lenient considering the seriousness of his earlier adjudications. The State disagrees and emphasizes evidence in the record showing that Ledesma poses a danger to himself due to his substance abuse and mental health issues inadequately addressed through local supervision and poses a danger to the community because of his escalating criminal behavior.

A standard range disposition clearly too lenient considering the seriousness of the juvenile's prior adjudications is a statutory aggravating factor under RCW 13.40.150(3)(i)(viii). In determining whether a standard range sentence is clearly too lenient, the court determines whether the standard range would, under the circumstances, present a danger to society and to the welfare of the juvenile. *State v. Meade*, 129 Wn. App. 918, 924, 120 P.3d 975 (2005). One does not need to be a "serious offender" to pose a serious and clear danger to society. *State v. Taylor*, 42 Wn. App. 74, 76, 709 P.2d 1207 (1985).

We conclude that substantial evidence supports the juvenile court's finding that the standard range was clearly too lenient for Guillermo Adam Ledesma. Substantial evidence shows Ledesma to present a danger to society and to himself. Testimony shows that Ledesma's behavior and conduct worsened under probation and he needs more structure to successfully rehabilitate. He lacks any remorse for his crimes and does not compensate his victims.

Only three months after completing aggression replacement training on March 2, 2015, Guillermo Adam Ledesma reoffended in June 2015 and committed third degree malicious mischief. While under supervision for his malicious mischief disposition, Ledesma appeared before the court on three separate occasions for violations. On the third violation, the juvenile court ordered Ledesma to fifteen days' confinement. Shortly after being released, he committed the current offense.

*Findings of Fact 5 and 9: Structured environment*

Guillermo Adam Ledesma contends that the juvenile court erred when it found that he was not amenable to supervision and his home environment did not provide him with structure, thereby concluding that he needed the structure of the juvenile detention center. The State argues that substantial evidence supports the juvenile court's finding that Ledesma needed the structure of juvenile detention. We agree with the State.

Guillermo Adam Ledesma maintains that the juvenile court speculates about the need for structure because the State proposes no plan or course of treatment.

Nevertheless, the concept of "treatment" under the Juvenile Justice Act is not limited to any particular form. *State v. Ogden*, 102 Wn. App. 357, 369, 7 P.3d 839 (2000). In certain circumstances, the structured and disciplined environment of detention may itself be beneficial and thus responsive to the current needs of the juvenile offender. *State v. Ogden*, 102 Wn. App. at 369-70. The record reflects that the probation department outlined a proposed treatment plan. The State need not establish a detailed plan.

Substantial evidence supports the juvenile court's finding that Guillermo Adam Ledesma needs more structure than what local supervision or his home environment can provide. Ledesma does not respect his father's authority and his father cannot control him. Ledesma does not respect the probation department's authority. He continues to violate the terms of his probation and reoffend. Ledesma ignores treatment needed to combat his substance abuse and mental health issues. Juvenile detention will provide Ledesma structure and supervision. In detention, Ledesma will also receive treatment for his substance abuse problems and family issues, as well as have the opportunity to make progression on his school studies.

*Findings of Fact 8 and 10: Ledesma poses a danger to society*

Guillermo Adam Ledesma contends that the trial court erred in finding that society needs protection from him. He also contends that insufficient evidence supports the juvenile court's finding that he lacks empathy and will face harm if he continues associating with his current confederates. The State disagrees and argues that substantial

13

evidence shows that Ledesma poses a danger because of his criminal history, lack of empathy, worsening behavior during supervision, poor school attendance, substance abuse, mental health issues, and a continuing temper despite aggression replacement training. We agree with the State.

One of the aggravating factors that the juvenile court must consider prior to entering a dispositional order is whether the juvenile offender presents a threat to the community. *State v. Ogden*, 102 Wn. App. at 369 (2000). Factors relevant to this determination include a juvenile offender's escalating criminal behavior, inability of the juvenile's parents to control him or her, and the juvenile's egregious lack of remorse. *State v. S.S.*, 67 Wn. App. 800, 817, 840 P.2d 891 (1992); *State v. Wood*, 57 Wn. App. 792, 800, 790 P.2d 220 (1990). We previously discussed Guillermo Adam Ledesma's danger to the community.

A juvenile offender's lack of remorse constitutes an aggravating factor when it is egregious. *State v. Wood*, 57 Wn. App. at 800. In *State v. Wood*, the court found egregious conduct when a defendant joked with her husband's killer about sounds her husband made after the killer shot him. The defendant went to meet a boyfriend's family ten days after her husband's death. Another court found a defendant's lack of remorse an independent factor when he bragged and laughed about the murder he committed and joked about being on television. *State v. Erickson*, 108 Wn. App. 732, 737-40, 33 P.3d 85 (2001). In a third case, the court found lack of remorse egregious when the defendant

14

continued to blame the justice system for his crimes and his apology was not credible. *State v. Ross*, 71 Wn. App. 556, 563-64, 861 P.2d 473, 883 P.2d 329 (1993).

Substantial evidence shows that Guillermo Adam Ledesma's father cannot control him and his home environment does not provide him with structure and supervision. Ledesma's father must work and leaves him alone in the trailer. Ledesma enjoys the freedom to come and go as he pleases. Outside of Ledesma's father, no family member will care for Ledesma because of his uncontrolled behavior.

Substantial evidence indicates Guillermo Adam Ledesma lacks empathy. Probation Officer Steve Driscoll testified that Ledesma has made no attempt to compensate the victims and that Ledesma cares not for the results of his deeds. Victim Agustin Ortega echoed this testimony. Ortega claims that Ledesma has burglarized his home on several occasions.

We also conclude that substantial evidence supports the juvenile court's finding of safety concerns for Guillermo Adam Ledesma if he continues with his current course of conduct. The record shows Ledesma traveling a dangerous path. Ledesma continually violates his probation and reoffends. He ignores his substance abuse and mental health issues. Ledesma disappears from his father's home for weeks at a time, presumably living on the streets. He cavorts with nefarious individuals and participates in a gang.

15

*Findings of Fact 12, 13 and 14: Particularly vulnerable victims*

Guillermo Adam Ledesma next contends that insufficient evidence supports the juvenile court's findings that Alicia and Agustin Ortega were particularly vulnerable victims. In a footnote, the State concedes that the juvenile court erred when it found Agustin Ortega to be a particularly vulnerable victim. One might argue that Alicia Ortega's vulnerability leads to her husband's vulnerability since a husband worries about his wife, particularly a pregnant wife. Nevertheless, we accept the State's concession.

We address whether the juvenile court correctly labeled Alicia Ortega a vulnerable victim. Victim vulnerability is a statutory aggravating factor that clearly and convincingly supports the conclusion that a disposition within the standard range would constitute a manifest injustice. RCW 13.40.150(3)(i)(iii). "Particularly vulnerable victim" is not defined in either the Juvenile Justice Act or the Sentencing Reform Act. In evaluating this factor, a trial court may consider whether the "defendant knew or should have known that the victim of the current offense was particularly vulnerable or incapable of resistance due to extreme youth, advanced age, disability, or ill health." *State v. Ogden*, 102 Wn. App. at 366 (2000); *see also* RCW 9.94A.535(3)(b). The inquiry focuses on whether the victim was more vulnerable to the offense than other victims and whether the particular vulnerability was a substantial factor in the accomplishment of the crime. *State v. Ross*, 71 Wn. App. at 565 (1993).

16

Guillermo Adam Ledesma knew Alicia Ortega was pregnant at the time of the offense, but no evidence indicates that her pregnancy factored into Ledesma's decision to burglarize her home. On the contrary, Ledesma burglarized the Ortega's home on several other occasions when Alicia was not pregnant.

The juvenile court found "a level of sophistication demonstrated in selecting the victim whom are family members" that contributes to the aggravating factor of victim vulnerability. CP at 39. Planning and sophistication are listed as subfactors in the Sentencing Reform Act to be considered when imposing exceptional sentences for major economic crimes or violations of the Uniformed Controlled Substances Act, chapter 59.60 RCW. *State v. Wood*, 57 Wn. App. at 801 (1990). This factor has been extended to other adult crimes not involving economic or drug offenses. *State v. Wood*, 57 Wn. App. at 801. Sophistication justifies an exceptional sentence only if it is "'of a kind not usually associated with the commission of the offense in question.'" *State v. Wood*, 57 Wn. App. at 801 (quoting *State v. Dunaway*, 109 Wn.2d 207, 219, 743 P.2d 1237, 749 P.2d 160 (1987)). In *State v. Wood*, the appellate court found a level of sophistication to support an exceptional sentence when the defendant manipulated others to commit crimes on her behalf. *State v. Wood*, 57 Wn. App. at 801.

In *State v. Vermillion*, 66 Wn. App. 332, 346, 832 P.2d 95 (1992), the trial court concluded that Marvin Lee Vermillion's crimes involved a high degree of sophistication and planning that occurred over a lengthy period of time. Evidence at trial established

17

that Vermillion sought his victims, assumed a false identity and personal history, reviewed possible locations and selected a suitably remote location for the commission of his offense. He further persuaded the victims to place their trust in him by misleading them as to his identity and personal history. The appellate court affirmed the trial court's conclusion that an exceptional sentence based on planning and sophistication was justified.

The record in this appeal lacks a showing of a level of sophistication required to justify an exceptional sentence. Guillermo Adam Ledesma selected family members as his victims and misled them regarding his intent behind declining attendance at the Christmas pageant. Nevertheless, this evidence infers an abuse of trust rather than sophistication. The record lacks evidence to indicate whether Ledesma planned to burglarize the Ortegas' home or whether it was a crime of opportunity.

We agree with Guillermo Adam Ledesma's assignment of error to the finding that Alicia and Agustin Ortega were particularly vulnerable victims. We later discuss the importance of striking this aggravating factor when we address the juvenile court's conclusions of law.

## Clear and Convincing Support

Guillermo Ledesma contends that the juvenile court's finding of manifest injustice lacks support from clear and convincing evidence. Such findings must be supported by clear and convincing evidence. *State v. Duncan*, 90 Wn. App. at 812 (1998). We already

18

reviewed the evidence in detail and determine that, except for the finding of vulnerability, clear and convincing evidence supports each finding.

## Conclusions of Law

The second part of reviewing whether a standard range disposition would create a manifest injustice is to determine whether the juvenile court's reasons articulated in conclusions of law clearly and convincingly support a manifest injustice disposition. RCW 13.40.230(2); *State v. Duncan*, 90 Wn. App. at 812 (1998). Whether a sentencing court's reasons justify a departure from the standard range is a question of law. *State v. Duncan*, 90 Wn. App. at 813.

The juvenile court entered five conclusions of law, four of which Guillermo Adam Ledesma challenges. We address each challenge to the juvenile court's conclusions of law separately.

### *Conclusion of Law 1: Particularly vulnerable victims*

Guillermo Adam Ledesma challenges the juvenile court's conclusion that Agustin and Alicia Ortega were particularly vulnerable victims. As discussed above, Ledesma is correct. We discuss below the import of striking this conclusion of law.

### *Conclusion of Law 3: Standard range is clearly too lenient*

Guillermo Adam Ledesma challenges the juvenile court's conclusion that the standard range disposition was clearly too lenient. A standard range disposition that is clearly too lenient is a statutory aggravating factor under the Juvenile Justice Act. RCW

19

13.40.150(3)(i)(viii). In the event substantial evidence in the record supports the factual finding of a statutory aggravating factor, such aggravating factor clearly and convincingly supports the conclusion that a disposition within the standard range would constitute a manifest injustice. *State v. Ogden*, 102 Wn. App. at 363 (2000). A standard range sentence is manifestly unjust if the disposition would either impose an excessive penalty on a juvenile or would pose a serious and clear danger to society. RCW 13.40.020(19).

As discussed above, substantial evidence supports the juvenile court's finding that the standard range was clearly too lenient because Guillermo Adam Ledesma posed a danger to society. Accordingly, we hold that the juvenile court's finding clearly and convincingly supports the juvenile court's conclusion that the standard range was clearly too lenient.

*Conclusion of Law 4: Structured supervision*

Guillermo Adam Ledesma contends that the record lacks substantial evidence to support the juvenile court's conclusion, as a matter of law, that Ledesma was not amenable to local probation supervision and needs the structure of the Juvenile Rehabilitation Administration for successful rehabilitation. We conclude that overwhelming evidence and findings of fact based on the evidence supports a conclusion that standard probation cannot provide the structure Ledesma needs to be successfully rehabilitated. Ledesma's time in probation did not rehabilitate him, and Ledesma's criminal activity increased.

20

*Conclusion of Law 5: Manifest injustice disposition*

Guillermo Adam Ledesma contends that the juvenile court erred in concluding as a matter of law that a disposition within the standard range constitutes a manifest injustice. The State disagrees and argues that the juvenile court's imposition of a manifest injustice should be affirmed. We agree with the State.

The challenge to conclusion of law 5 presents the overarching issue in this appeal. The primary issue is whether the imposition of a manifest injustice disposition was proper. The juvenile court concluded that a disposition within the standard range would constitute a manifest injustice disposition based on three aggravating factors and one nonaggravating factor: (1) the victims were particularly vulnerable, (2) Ledesma has a recent criminal history and has failed to comply with conditions of a recent disposition order, (3) local sanctions would be too lenient, and (4) standard probation cannot provide the structure Ledesma needs to be successfully rehabilitated.

Overwhelming evidence supports three of those four factors. We must decide whether the manifest injustice imposition should be upheld despite the invalidation of the particularly vulnerable victim aggravating factor.

An appellate court may affirm a manifest injustice finding if one or more factors supported by the record clearly and convincingly support the disposition, and the appellate court can determine that the juvenile court would have entered the same sentence on the basis of the remaining valid aggravating factors. *State v. K.E.*, 97 Wn.

App. 273, 284, 982 P.2d 1212 (1999). Where it is clear from the record that the juvenile court placed significant weight on inappropriate factors in departing from the standard range, the appropriate remedy is remand for resentencing. *State v. Bourgeois*, 72 Wn. App. 650, 664, 866 P.2d 43 (1994).

The record shows that the juvenile court did not place significant weight on Alicia and Agustin Ortega being particularly vulnerable victims. Rather, the focus of the disposition hearing centered on whether Guillermo Adam Ledesma posed a danger to society and to himself. The juvenile court based its imposition of a manifest injustice on Ledesma's need for the secure environment of the Juvenile Rehabilitation Administration to be successfully rehabilitated. Therefore, we affirm a manifest injustice disposition.

## Clearly Excessive

Since we conclude that the trial court committed no error when imposing a manifest injustice disposition, we must determine if the length of the twenty-one to twenty-eight week confinement to the juvenile facility was clearly excessive and arbitrarily decided. We also find no error in the length of the disposition.

In order to uphold a manifest injustice disposition, this court must determine whether the sentence imposed was either clearly excessive or clearly too lenient. RCW 13.40.230(2)(b). A manifest injustice disposition is excessive when the disposition cannot be justified by any reasonable view taken from the record. *State v. E.J.H.*, 65 Wn. App. 771, 776, 830 P.2d 375 (1992). Once a trial court legitimately decides to depart

22

from the standard range, the court has broad discretion to determine the length of the manifest injustice disposition. *State v. Duncan*, 90 Wn. App. at 815 (1998). The length of a manifest injustice disposition will be upheld absent a showing of an abuse of discretion. *State v. S.S.*, 67 Wn. App. at 819 (1992). A trial court abuses its discretion when its decision is manifestly unreasonable or is based on untenable grounds. *State v. Corona*, 164 Wn. App. 76, 78-79, 261 P.3d 680 (2011). There is no requirement under the Juvenile Justice Act that requires juvenile courts to state reasons for the length of a manifest injustice disposition. *State v. Ogden*, 102 Wn. App. at 371 (2000).

The juvenile court sentenced Guillermo Adam Ledesma to an upward manifest injustice disposition of twenty-one to twenty-eight weeks' confinement. The standard range for residential burglary, for one with an offender score of zero, is local sanctions, which constitutes a maximum of thirty days in detention, a ceiling of twelve months of probation, and completion of a limit of one hundred and fifty community service hours. RCW 13.40.0357; RCW 13.40.020(18).

The record supports a manifest injustice disposition of twenty-one to twenty-eight weeks as neither excessive nor unsubstantiated. The probation department recommended the disposition. The department worked closely with Guillermo Adam Ledesma over the past year and knew his circumstances the best. Ledesma has serious problems with authority and substance abuse and has an extensive criminal history. He exhausted his family and the probation department. Ledesma needed the structure of the Juvenile

23

No. 34005-8-III
*State v. Ledesma*

Rehabilitation Administration. The juvenile court reasonably determined this range provided the best opportunity for Ledesma to improve himself. The juvenile court carefully selected the disposition range after first reviewing whether the State's recommendation of twelve to sixteen weeks was appropriate.

## CONCLUSION

We uphold the juvenile court's manifest injustice disposition of twenty-one to twenty-eight weeks of detention.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Fearing, C.J.

WE CONCUR:

Lawrence-Berrey, J.

Pennell, J.

24